IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ZAPS TECHNOLOGIES LLC**; **CHEEVER CAPITAL MANAGEMENT LLC**; and **G6NINE LLC**,<br><br>Plaintiffs,<br><br>v.<br><br>**DR. GARY P. KLINKHAMMER**; **DR. CHRISTOPHER J. RUSSO**; **NATHAN W. KLINKHAMMER**; **ROGER A. MORRISON**; and **ELECTRON PATH, LLC**,<br><br>Defendants. | Case No. 6:20-cv-00760-IM<br><br>**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Douglas R. Ricks, Sussman Shank, LLP, 1000 SW Broadway, Suite 1400, Portland, OR 97205, and Thomas E. Bejin, Taft Stettinius & Hollister LLP, 27777 Franklin Rd., Suite 2500, Southfield, MI 48034. Attorneys for Plaintiffs.

Eliot M. Harris and Mark Lawrence Lorbiecki, Williams, Kastner & Gibbs PLLC, 601 Union Street, Suite 4100, Seattle, WA 98101. Attorneys for Defendants.

**IMMERGUT, District Judge.**

    Before this Court is a Motion for Summary Judgment ("Mot.") filed by Defendants Dr. Gary P. Klinkhammer ("Dr. Klinkhammer"), Dr. Christopher J. Russo ("Dr. Russo"), Nathan W.

PAGE 1 – OPINION AND ORDER ON SUMMARY JUDGMENT

Klinkhammer, Roger A. Morrison, and Electron Path, LLC (collectively "Defendants"), ECF 103. Defendants seek summary judgment on all of Plaintiffs' claims: trade secret misappropriation under federal law against all Defendants; breach of contract against Dr. Klinkhammer, Dr. Russo, and Electron Path, LLC; breach of the duty of good faith and fair dealing against Dr. Klinkhammer and Dr. Russo; and fraud against Dr. Klinkhammer, Nathan Klinkhammer, and Dr. Russo. Complaint ("Compl."), ECF 1. Plaintiffs filed their Complaint on May 8, 2020.

As detailed below, Defendants' Motion is GRANTED in part and DENIED in part. As to the trade secrets claims, Defendants are not entitled to summary judgment because there are genuine issues of material fact regarding whether Plaintiffs possessed trade secrets and identified them with particularity and whether Defendants obtained the trade secrets. As to the fraud claims, Defendants are not entitled to summary judgment because there are genuine issues of material fact regarding whether Defendants made a false representation, whether Plaintiffs had the right to rely on any false representation, and whether these claims are barred by the statute of limitations. As to the breach of contract claims, there is a genuine dispute of material fact whether Dr. Klinkhammer breached the confidentiality provision and whether Plaintiffs breached their contracts, and summary judgment is not warranted on that aspect of the claim. However, summary judgment is appropriate on the breach of contract claims based on Defendants' alleged failure to reduce the trade secrets to writing, as evidence of this oral agreement is excluded under the parol evidence rule. Finally, as to the breach of good faith and fair dealing claims, summary judgment is warranted as Plaintiffs have failed to provide sufficient evidence that a contract term was frustrated because Drs. Klinkhammer or Russo acted contrary to Plaintiffs' objectively reasonable expectations under the contracts.

## LEGAL STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the [non-movant's] position [is] insufficient" to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

## BACKGROUND

This case is about the LiquID Station ("LID"), a unique device used to detect contaminants in water. Joint Statement of Undisputed Material Facts ("Agreed Facts"), ECF 101 ¶¶ 6–7. The LID was developed by Defendant Dr. Gary Klinkhammer. *Id.* ¶ 26. Dr. Klinkhammer has filed several patents that cover certain aspects of the LID. *Id.* ¶¶ 26, 28, 33.

Dr. Gary Klinkhammer eventually founded ZAPS Technologies Inc. ("ZTI") to develop and market the LID. *Id.* ¶¶ 24–25. ZTI issued stock and named Milton Cheever to its board pursuant to a financing agreement. *Id.* ¶ 35. ZTI subsequently hired Defendants Dr. Christopher Russo and Nathaniel Klinkhammer. *Id.* ¶¶ 36, 43.

Around 2017, ZTI began to encounter financial and governance difficulties. *See id.* ¶ 47. The company eventually went into receivership. Agreed Facts, ECF 101 ¶ 50. On February 7, 2018, Cheever Capital Management ("CCM") purchased ZTI's intellectual property, including trade secrets, and certain other assets. Compl., ECF 1, Ex. J. at 5. CCM assigned all the intellectual property and assets to Plaintiff G6Nine LLC. Agreed Facts, ECF 101 ¶ 56. Milton Cheever is the managing partner of CCM and Edward Cheever is a partner at CCM. *See* Compl., ECF 1, Ex. J at 14. CCM formed Plaintiff ZAPS Technologies LLC ("ZAPS LLC") to serve as G6Nine's operating entity. Compl., ECF 1 ¶ 83. ZTI is now defunct. Deposition of Edward Cheever ("Cheever Depo."), ECF 110-6 at 119.

ZAPS LLC executed contracts with Drs. Klinkhammer and Russo, as well as Defendant Electron Path, LLC. Compl., ECF 1, Exs. K–M. Defendant Roger Morrison owns Electron Path, LLC, and worked for ZAPS LLC through Electron Path LLCs. Deposition of Roger Allen Morrison, ECF 110-9 at 7–9. Drs. Klinkhammer and Russo eventually left ZAPS LLC in 2019. Agreed Facts, ECF 101 ¶¶ 59–60; Cheever Depo., ECF 110-6 at 120. ZAPS LLC ceased operations in March 2020. Compl., ECF 1 ¶ 133.

Plaintiffs allege that Defendants failed to turn over trade secrets to ZAPS LLC after they left the company. *Id.* ¶¶ 129, 131. Instead, Plaintiffs allege that Defendants formed another company to market a similar product, based at least in part on those trade secrets. *Id.* ¶¶ 134, 157. Plaintiffs also allege that Defendants made false representations about these trade secrets that led CCM to purchase ZTI's intellectual property and invest in ZAPS LLC. *Id.* ¶¶ 75–77.

## DISCUSSION

The summary judgment record in this case consists of over five thousand pages of evidence. Under this Court's Case Management Order, the parties were required to jointly file a Joint Statement of Agreed Material Facts. ECF 73 at 3. The parties repeatedly failed to submit

this filing on time, *see* ECF 85–90, 101–102, and ultimately filed a sixty-two-page document with thousands of pages of exhibits. Agreed Facts, ECF 101. Despite labeling this document as a "joint concise statement," it exceeds the five-page limit by fifty-seven, and doubtlessly exceeds the word count limit in equal measure. *See* Local Rule 56-1(a). The vast majority of "facts" in this document are disputed.[1] Defendants went on to file thousands of pages of exhibits to support their Motion for Summary Judgment. ECF 104, 112. This massive record is not to Defendants' benefit in ruling on summary judgment.

This Court also reminds defense counsel of their obligation to comply with this District's Local Rules. This Court has repeatedly informed defense counsel of their noncompliance. *See* ECF 102, 119. The instant Motion fails to comply with the mandatory certification requirement. *See* Local Rule 7-1(a). Any future non-compliant filings will be rejected.

As explained in more detail below, Defendants have failed to satisfy their initial burden of affirmatively showing the absence of a genuine issue of material fact on Plaintiffs' trade secrets and fraud claims, as well as on Defendants' statute of limitations affirmative defense. Summary judgment is appropriate, however, on Plaintiffs' breach of good faith and fair dealing claims and part of Plaintiffs' breach of contract claim.

**A. Defend Trade Secrets Act ("DTSA") Claims**

"To succeed on a claim for misappropriation of trade secrets under the DTSA, a plaintiff must prove: (1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020) (citing 18

---

[1] In the Agreed Facts, Defendants label their version of the facts as "undisputed," with Plaintiffs' version of events labeled "Plaintiffs' response."

U.S.C. § 1839(5)). Under the DTSA, a trade secret is broadly defined. *Id.* at 657. The definition of trade secrets consists of "three elements: (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." *Id.* (citing 18 U.S.C. §§ 1839(3), (5)). Plaintiffs must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." *Id.* at 658 (omission in original, emphasis and internal quotation marks omitted). At summary judgment, Plaintiffs' burden "is only to identify at least one trade secret with sufficient particularity to create a triable issue." *Id.* at 659.

### 1. A Reasonable Jury Could Find that Plaintiffs Possessed Trade Secrets and Identified Them With Sufficient Particularity

At the highest level of generality, Plaintiffs described its trade secrets as relating to "Hybrid Multispectral Analysis," a technology allegedly used by, and unique to, the LID. Compl., ECF 1 ¶ 16. More concretely, Plaintiffs identified twenty pieces of "technical information" that they believe to be trade secrets misappropriated by Defendants. *Id.* ¶ 127.

Edward Cheever, managing partner of Plaintiff CCM, testified that ZAPS LLC considers "[t]he manner in which customer grab sample data . . . is utilized to create equations, and make coefficient adjustments, and/or calibrations" to be confidential, have value, and be trade secrets. 30(b)(6) Deposition of Edward Cheever on behalf of ZAPS LLC ("30(b)(6) Depo."), ECF 101-28 at 11.; Compl., ECF 1 ¶ 127a. Mr. Cheever further testified that ZAPS LLC considers "methods to analyze data collected for zeros, and calculate water zero intercept and slope values for channels on the LID and/or LID XR+ instruments, for entry into a SeaDragon channel configuration" to be a trade secret, as well as this same process done with air. 30(b)(6) Depo., ECF 110-1 at 32–33, 47; Compl., ECF 1 ¶ 127b–c. Mr. Cheever also testified that he considers information relating to the relationship between these two values and their use to be a trade

secret. 30(b)(6) Depo., ECF 110-1 at 47–48; Compl., ECF 1 ¶ 127d. He also testified that the process of selecting "neutral density filters, thereby adjusting the baseline of the instrument," also constituted a trade secret. 30(b)(6) Dep., ECF 101-20 at 58; Compl, ECF 1 ¶ 127e. This Court need not go on. This testimony is supported by the conclusion of Plaintiff's expert that "trade secrets are involved." Report of Dr. Eric Heinen De Carlo ("De Carlo Report"), ECF 101-8 ¶ 122. There is a genuine dispute as to whether Plaintiffs identified at least one trade secret with sufficient particularity. *See InteliClear*, 978 F.3d at 659.

There are five patents concerning the LID technology. Declaration of Mark L. Lorbiecki, ECF 104-13 to 104-17, Exs. 13–17. The Ninth Circuit has held that disclosure of a trade secret in a patent application extinguishes the trade secret. *Attia v. Google LLC*, 983 F.3d 420, 425–26 (9th Cir. 2020). Defendants argue that the patents "disclos[e] the LID's structure and function" such that "the nature of the LID is in the public domain." Mot., ECF 103 at 29. But what information was disclosed in the patents is a dispute of material fact. Plaintiff's expert, Dr. De Carlo, opined that the information in the patents was limited to "design characteristics." De Carlo Report, ECF 101-8 ¶ 85. Mr. Cheever also testified that one cannot glean from the patents how the LID works. Cheever Decl., ECF 101-19 at 63. Summary judgment is not appropriate on the trade secrets claims based on the patents.

Defendants also argue that there are no trade secrets involved in the LID because the science of spectrophotometry and methods of analyzing the results of spectrophotometric instruments are publicly known. Mot., ECF 103 at 24. But Defendants have not established that the combination of that information in the LID that Plaintiffs have identified as trade secrets is publicly known. *See Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 962 (C.D. Cal. 2011) ("It does not matter if a portion of the trade secret is generally known, or even that every

individual portion of the trade secret is generally known, so long as the combination of all such information is not generally known." (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1089–90 (N.D. Cal. 2006))).

Finally, Defendants argue that there are no trade secrets because details of the LID construction can be reverse engineered from the device itself. Mot., ECF 103 at 28–29. Reverse engineering is generally lawful under federal trade secrets law, 18 U.S.C. § 1839(6)(B), and evidence that information is "readily ascertainable through proper means" tends to suggest it is not a trade secret. But Mr. Cheever testified that the LID could not be easily replicated. Cheever Decl., ECF 101-19 at 63. This is sufficient to create a dispute of material fact regarding whether the LID contained trade secrets.

### 2. A Reasonable Jury Could Find that Defendants Misappropriated Plaintiffs' Trade Secrets

Under the DTSA, "misappropriation" means either (1) the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means," or (2) the "disclosure or use of a trade secret of another without express or implied consent" by a person who acquired it through improper means. 18 U.S.C. § 1839(5). Defendants argue that there has been no allegation of acquisition or disclosure, nor any evidence of commercial use. Mot., ECF 103 at 31. There is a genuine issue of material fact as to whether Defendants misappropriated trade secrets.

As to "acquisition," Plaintiffs have put forward evidence that Dr. Klinkhammer began to reduce purported trade secrets to writing and that he took those materials with him instead of turning them in to ZAPS LLC when he left the company. Deposition of Dr. Gary P. Klinkhammer ("Klinkhammer Depo."), ECF 101-26 at 230–31. Defendants cite an Oregon Trade Secrets Act case, Mot., ECF 103 at 31, but the instant case differs because here there is evidence

that Dr. Klinkhammer took Plaintiffs' documents. *Cf. IKON Off. Sols., Inc. v. Am. Off. Prod., Inc.*, 178 F. Supp. 2d 1154, 1169 (D. Or. 2001) ("There is no evidence that any documents were taken, only what is in defendants' minds."). A jury could find acquisition.

As to use, Defendants argue that actual use of a trade secret is required. Mot., ECF 103 at 31. Plaintiffs maintain that threatened use is sufficient. Response to Motion for Summary Judgment ("Resp."), ECF 109 at 21. The plain text of the DTSA states that "use" is required and makes no mention of threatened use. 18 U.S.C. § 1839(5)(B). The Ninth Circuit has held, in interpreting an identical definition in a state trade secrets act, that actual use is required for damages. *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1131 (9th Cir. 2010) (analyzing Idaho Code Ann. § 48–801(2)); *see BigRentz, Inc. v. KGM Enters., LLC*, No. 22-CV-00430, 2023 WL 7496726, at *2 (D. Idaho Nov. 13, 2023) ("Courts have analyzed claims brought under the DTSA and state trade secrets acts . . . together because the elements are substantially similar."). Thus, Plaintiffs must show actual use to establish "use" under the DTSA. They have not done so.

However, Plaintiffs may be able to obtain an injunction, if appropriate, upon a showing of threatened use. Compl., ECF 1 at 41 (requesting injunctive relief); *JustMed*, 600 F.3d at 1131 (noting court may enjoin threatened use); *see also CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 263 (5th Cir. 2022) (analyzing "use or potential use" to determine if plaintiff was entitled to preliminary injunction). Plaintiffs have put forward sufficient evidence of threatened use; specifically, that Defendants are working on a hand-held device allegedly using Plaintiffs' trade secrets to detect E. coli and other water contaminants. *See* Klinkhammer Depo., ECF 101-26 at 18–19. Summary judgment is therefore not warranted on Plaintiffs' DTSA claims.

B. **Fraud Claims**

   1. **Statute of Limitations**

Defendants seek summary judgment on their affirmative defense that Plaintiff's fraud claims are barred by the statute of limitations. Mot., ECF 103 at 39–40. A defendant moving for summary judgment on an affirmative defense must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Under Oregon's discovery rule, a cause of action for fraud accrues, and the two-year limitations period begins to run, when the plaintiff discovers or reasonably should have discovered the false statement. *Berry v. Branner*, 245 Or. 307, 315–16 (1966); O.R.S. 12.110(1).

Defendants argue that Plaintiffs' fraud claims are barred because the allegedly false statements were made in November 2017. Mot., ECF 103 at 39–40. Plaintiffs respond that the statute of limitations does not accrue on the date of the false statements, but rather when they were or should have reasonably been discovered. Resp., ECF 109 at 7. Defendants reply that, as an investor and former board member of ZTI, Milton Cheever "should have known of the performance of the LID" at that time. Reply, ECF 111 at 28.

Genuine issues of material fact preclude summary judgment on the question of whether the statute of limitations bars Plaintiffs' fraud claims. A reasonable jury could find that Plaintiffs reasonably should have obtained knowledge of the alleged false statements only in August 2019, when a report was published finding that the device "had poor correlation . . . to laboratory analysis." Ricks Decl., ECF 110-3, Ex. 55 at 4. Defendants have not affirmatively established that Plaintiffs knew or should have known about the alleged false statements prior to May 2018, two years before the Complaint was filed.

PAGE 10 – OPINION AND ORDER ON SUMMARY JUDGMENT

### 2. A Reasonable Jury Could Find That Defendants Fraudulently Induced CCM to Buy ZTI's Intellectual Property

The parties agree that to prove fraud under Oregon law, Plaintiffs must show:"(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Conzelmann v. Nw. Poultry & Dairy Prods. Co.*, 190 Or. 332, 350 (1950); Mot., ECF 103 at 37; Resp., ECF 109 at 31. As to prong eight, Oregon case law requires reliance on an allegedly fraudulent statement to be reasonable. *Oregon Pub. Emps. Ret. Bd. ex rel. Oregon Pub. Emps. Ret. Fund v. Simat, Helliesen & Eichner*, 191 Or. App. 408, 428 (2004). "Reasonableness is measured in the totality of the parties' circumstances and conduct." *Id.*

Defendants argue that, because Mr. Cheever was on the board of ZTI and had extensive experience with the LID, he could not reasonably have relied on any of the fraudulent statements. Mot., ECF 103 at 37. A reasonable jury could find that Mr. Cheever's status as a non-scientist[2] made him a less sophisticated party than Dr. Klinkhammer and Dr. Russo. *See Simat*, 191 Or. App. at 428. ("[I]f there is a naive and unsophisticated plaintiff on one side of the equation and an unscrupulous defendant who made active misrepresentations of fact on the other, a court might well conclude that, although a more sophisticated party would not have taken at face value the false representations of the defendant, *that* particular plaintiff was justified in doing so." (emphasis in original)). Dr. Klinkhammer testified that it was fair for Mr. Cheever to rely on Dr. Klinkhammer's statements of science. Klinkhammer Depo., ECF 110-2 at 155.

---

[2] 30(b)(6) Depo., ECF 110-1 at 10.

Defendants argue that Plaintiffs have not shown falsity. Mot., ECF 103 at 38. Falsity in this case is a disputed material fact. Plaintiffs' expert opined that Defendants falsely represented that the LID was "accurate" and "low maintenance" when, in reality, it was "a finicky/ temperamental research instrument, that was incapable of meeting the stated claims." De Carlo Report, ECF 101-8 ¶ 123. Defendants' expert, on the other hand, opined that the device is accurate and low maintenance. Rebuttal Report of Dr. Robert Collier, ECF 101-7 at 12, 14. A jury is entitled to weigh these competing claims and determine the credibility of the witnesses. Summary judgment is not warranted on Plaintiffs' fraud claim.[3]

## C. Breach of Contract Claims

To succeed on a breach of contract claim under Oregon law, a plaintiff must show: (1) the existence of a contract; (2) the relevant contract terms; (3) that the plaintiff fully performed and did not breach the contract; and (4) that the defendant breached the contract terms resulting in damage to the plaintiff. *Slover v. Or. State Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570 (1996).[4] Here, Plaintiffs have provided evidence of three written contracts, executed between ZAPS LLC and Dr. Klinkhammer, Dr. Russo, and Electron Path, respectively. Compl., ECF 1, Exs. K, L, M. Plaintiffs argue that these Defendants breached their respective agreements in two ways. Each is discussed in turn.

---

[3] Defendants raised, for the first time in their Reply, their arguments that Plaintiffs' fraud and good faith and fair dealing claims fail to comply with Federal Rules of Civil Procedure 8 and 9(b), Reply, ECF 111 at 1–2, 5–6, 28–30, and that the trade secrets allegations are insufficient under *Iqbal* and *Twombly*. *Id.* at 2, 21–22. These arguments are thus waived and this Court declines to consider them. *See United States v. Cox*, 7 F.3d 1458, 1463 (9th Cir. 1993) ("[A] party may not make new arguments in the reply brief.").

[4] This Court notes that the contracts state that Delaware law applies. Compl., ECF 1, Exs. K–M at 3. Since the parties' briefs applied Oregon law, Mot., ECF 103 at 34; Resp., ECF 109 at 24, this Court will apply Oregon law.

1. **Agreement to Reduce Trade Secrets to Writing**

Plaintiffs interpret the contracts to require Drs. Klinkhammer and Russo to reduce the alleged trade secrets to writing before they left the company. Resp., ECF 109 at 23–24. Plaintiffs do not specify which contractual provision imposes this requirement. *See id.* Mr. Cheever testified that Drs. Klinkhammer and Russo "verbally promised to reduce their knowledge, know-how and trade secrets in their mind to writing" and did not do so. 30(b)(6) Depo., ECF 110-1 at 74, 88. Defendants argue that this alleged verbal agreement is excluded under the parol evidence rule. *See* Mot., ECF 103 at 34. This Court agrees with Defendants and concludes that the parol evidence rule bars evidence of this verbal agreement.[5]

The parol evidence rule "provides that a binding, completely integrated, written agreement supersedes or discharges all agreements, written or oral," that predate it, and excludes extrinsic evidence of additional terms not contained in the writing. *Abercrombie v. Hayden Corp.*, 320 Or. 279, 286 (1994). Here, the parties appear to agree that the contracts are written and binding.

The question is whether the contracts are completely integrated. A document is fully integrated "if the facts are susceptible of meaning only that a reasonable person in the circumstances would have understood the writing or group of writings to be a complete and exclusive expression of all the terms of their agreement." *Wescold, Inc. v. Logan Int'l, Ltd.*, 120 Or. App. 512, 520 (1993). "A writing that is facially complete creates a presumption that it was

---

[5] While Plaintiffs provide no evidence regarding when the asserted promises were made, if the promises were made before the execution of the contracts, they would be barred by the parol evidence rule. If made after the execution of the contracts, then they would fail for lack of consideration. *See Kornbrodt v. Equitable Tr. Co.*, 137 Or. 386, 392 (1931) ("There must be a consideration for every contract, and unless the contract is one which imports a consideration, . . . the consideration must be proved, and consequently it should be stated.").

intended to be a complete integration." *Sterling Sav. Bank v. JHM Props., LLC*, 717 F. Supp. 2d 1142, 1148 (D. Or. 2010). This presumption can be overcome only by "substantial evidence that the parties did not intend the writing to embody the entire agreement." *Hatley v. Stafford*, 284 Or. 523, 535 (1978).

The contracts here are complete on their face. Each states that the agreement "contains the entire agreement" between the parties, and each of the contracts with Dr. Klinkhammer and Dr. Russo states that it "replaces any prior agreement between the parties." Compl., ECF 1, Exs. K & M at 2–3, Ex. L at 3. Plaintiffs have failed to provide substantial evidence that the parties intended the contracts to be incomplete. Plaintiffs do not address the parol evidence rule and instead argue that their interpretation is supported by context and Dr. Klinkhammer's alleged partial performance of this asserted oral agreement. Resp., ECF 109 at 23–24. This is not substantial evidence that a reasonable person in the circumstances would have understood the contracts to be incomplete. Plaintiffs may not side-step the parol evidence rule, and this Court will not allow a jury to consider parol evidence just because a party claims a writing does not include all the terms of an agreement. *See Hatley*, 284 Or. at 535.

Neither have Plaintiffs argued that there is any ambiguity in the contracts. Extrinsic evidence to explain an ambiguity in the writing is permitted under the parol evidence rule. *Abercrombie*, 320 Or. at 291–92. Whether a term is ambiguous is a question of law. *Id.* at 292. Plaintiffs have not pointed this Court to any ambiguous term such that evidence of a verbal agreement would be admissible.

Plaintiffs have failed to create a triable issue as to whether the contracts were partially integrated. Summary judgment to Defendants is warranted on Plaintiffs' claim for breach of contract based on an alleged failure to reduce trade secrets to writing.

### 2. Confidential Information

Plaintiffs allege that Dr. Klinkhammer, Dr. Russo, and Electron Path breached the following provision in each of their contracts:

> Contractor agrees not to use or disclose confidential information for any purpose, except to the extent necessary to perform services pursuant to this Agreement. "Confidential Information" includes, but [is] not limited to, proprietary information regarding the Company's affairs, or the affairs of its affiliated entity, G6Nine, LLC, including without limitation, proprietary product specifications, proprietary algorithms, proprietary software and codes, business plans, customer lists, customer requests, emails and personnel information. Contractor agrees to return all Confidential Information to Company upon request or termination [of] this Agreement.

Compl., ECF 1 ¶ 168.

There is a genuine dispute of material fact as to whether Dr. Klinkhammer took confidential information with him when he left the company. Dr. De Carlo opined that "Dr. Klinkhammer took with him a substantial amount of ZAPS LLC confidential information" when he left the company, including training documents and technical information that is confidential and not public. ECF 101-8 ¶¶ 86, 105, 131. A jury could find that taking this information breached this contractual provision.

Plaintiffs have not argued or provided evidence that Dr. Russo or Electron Path (through Roger Morrison) breached the confidentiality provision. Plaintiffs do not articulate in their brief how Electron Path breached its contract at all. Summary judgment is appropriate as to Defendants Dr. Russo and Electron Path on the breach of contract claims.

#### a. Breaches by Plaintiffs

Defendants argue that Plaintiffs cannot satisfy the third prong of a breach of contract claim because Plaintiffs breached their own contracts by allegedly failing to provide a wet laboratory and appropriate scientific equipment. Mot., ECF 103 at 35. Defendants maintain that

PAGE 15 – OPINION AND ORDER ON SUMMARY JUDGMENT

this is a breach by Plaintiffs of the contract clause that states: "The Company will provide proprietary technical information, tools, training, systems access, and materials, as necessary to Contractor. A cubical space or lab workspace will be made available for Contractor. . . ." *Id.*; Compl., ECF 1, Exs. K–M at 2. This Court is unable to find evidence in the record in support of this assertion, let alone sufficient evidence for this Court to declare a breach as a matter of law. Plaintiffs put forward evidence that there was a lab, Cheever Depo., ECF 110-6 at 126, and the contract provision does not specify that the lab must be a wet chemistry lab. This Court cannot declare that, as a matter of law, Plaintiffs breached their contracts.

Summary judgment is not appropriate on the breach of contract claim against Dr. Klinkhammer based on his alleged breach of the confidentiality provision.

### D. Breach of the Duty of Good Faith and Fair Dealing Claims

#### 1. Plaintiffs Have Failed to Create a Triable Issue as to Whether Drs. Klinkhammer and Russo Breached Their Duties of Good Faith and Fair Dealing

In Oregon, "[t]he law imposes a duty of good faith and fair dealing in the performance and enforcement of every contract." *Hampton Tree Farms, Inc. v. Jewett*, 320 Or. 599, 615 (1995). This duty "effectuate[s] the objectively reasonable expectations of the parties." *Id.* This duty also "prevents a party from performing the contract in such a way as to deprive the other party of the fruits of the contract." *Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or. 270, 283 (2011). A party may violate the duty of good faith and fair dealing without breaching the express terms of the contract. *Klamath Off-Proj. Water Users, Inc. v. Pacificorp*, 237 Or. App. 434, 445 (2010). But the duty cannot contradict an express term of the agreement or provide a remedy for an act expressly permitted by the contract. *Id.*

Plaintiffs allege that Drs. Klinkhammer and Russo were obligated under the contracts to (1) truthfully communicate to Plaintiffs about the LID's accuracy and reliability and (2) fully

disclose all interactions with Dr. Kate Field. Compl., ECF 1 ¶¶ 183–84. Plaintiffs then assert that Dr. Klinkhammer and Dr. Russo breached the duty of good faith and fair dealing by lying about the LID and failing to disclose their interactions with Dr. Field. *Id.*

Defendants argue that Plaintiffs' breach of good faith and fair dealing claims are actually fraud claims. Mot., ECF 103 at 36–37. This Court agrees that Plaintiffs have not pleaded or shown sufficient evidence of a breach of good faith and fair dealing claim. Plaintiffs do not allege, or state in their brief, which contract provision created the asserted obligations. While a party may violate the duty of good faith and fair dealing without breaching an express contractual term, *Klamath*, 237 Or. App. at 445, Plaintiffs must point to some term of the contract that a jury could find was frustrated because Drs. Klinkhammer and Russo acted contrary to its purpose and Plaintiffs' objectively reasonable expectations. No reasonable jury could find that the contracts contained an implied duty for Drs. Klinkhammer and Russo to truthfully communicate about the LID's accuracy and fully disclose all interactions with Dr. Field in order to effectuate the parties' objectively reasonable expectations regarding the contracts. Summary judgment is granted to Defendants on Plaintiffs' claims for breach of the duty of good faith and fair dealing. Accordingly, this Court need not address Defendants' assertion that these claims are barred by the statute of limitations. *See* Mot., ECF 103 at 36–37.

## CONCLUSION

Defendants' Motion for Summary Judgment, ECF 103, is GRANTED in part and DENIED in part. Parties are ORDERED to jointly prepose pretrial deadlines and a trial date on or before December 6, 2024.

//

**IT IS SO ORDERED.**

DATED this 18th day of November, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge
